**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YOR**

| | |
|---|---|
| **HUMBERTO RODRIGUEZ, on behalf of himself and all others similarly situated,**<br><br>**Plaintiff,**<br><br>**-against-**<br><br>**SERENDIPITY RESTAURANT LLC, SERENDIPITY 3, INC., and 150 SQUARETIME LLC,**<br><br>**Defendants.** | **No: 26 Civ. 5365**<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT** |

Humberto Rodriguez ("Plaintiff"), individually and on behalf of all others similarly situated, as class representative, upon personal knowledge as to himself, and upon information and belief as to other matters, alleges as follows:

## NATURE OF THE ACTION

1. This lawsuit seeks to recover minimum wages, overtime compensation, uniform reimbursement, uniform maintenance, and other damages for Plaintiff and his similarly situated co-workers – servers, runners, bussers, bartenders, barbacks (collectively, "Tipped Workers") who work or have worked at Serendipity 3 at 225 E 60th Street, New York, New York 10022 ("Serendipity 3") and 157 W 47th Street, New York, New York 10036 ("Serendipity Time Square") (together "Defendants" or the "Restaurants'").

2. Serendipity 3 is owned and operated by Serendipity Restaurant LLC and Serendipity 3, Inc.

3. Serendipity Time Square is owned and operate by 150 Squaretime LLC.

4. The iconic New York City Restaurant opened its doors in 1954 and has since

continued to offer food and over the top desserts.[1]

5. In 2024, Defendants opened a second location in Time Square, New York offering all the favorites from Serendipity 3 and more.[2]

6. Defendants have been part of a single integrated enterprise that jointly employs Plaintiff and similarly situated Tipped Workers.

7. At all relevant times, Defendants operated a single enterprise with significant interrelation of operations including but not limited to name, menu, marketing, selling the same or similar food, décor, use of the same website, sharing employees, and upon information and belief the same payroll office and benefit plans.

8. Defendants have failed to properly compensate Tipped Workers who work or have worked for them throughout the relevant time period.

9. At all times relevant, Defendants paid Plaintiff and other Tipped Workers at the "tipped" minimum wage rate for tipped employees. In other words, Defendants pay Tipped Workers an hourly rate under the full minimum wage rate pursuant to the federal and state "tip credit."

10. Defendants, however, have not satisfied the strict requirements under the Fair Labor Standards Act ("FLSA") and/or the New York Labor Law ("NYLL") by which they could take a tip credit towards the hourly rates paid to Tipped Workers.

11. In this regard, Defendants failed to provide Plaintiff and other Tipped Workers at both Restaurants with proper notification of the tipped minimum wage rate or tip credit provisions of the FLSA and/or NYLL.

---

[1] *See* NYC's Iconic Sweet Spot (available at https://serendipity3.com/our-history/) (last visited June 15, 2026).
[2] *See* Serendipity Time Square (available at https://serendipity3.com/serendipity3-times-square/) (last visited June 15, 2026).

12. Defendants also required Plaintiff and other Tipped Workers, at both Restaurants, to spend a substantial amount of time, 2 hours or more than 20% of their worktime, performing non-tipped producing side work unrelated to their tipped occupation.

13. Defendants required Plaintiff and Tipped Workers to perform side work at the start of each shift and end of each shift, when the Restaurants are closed to the public, and also during service. As means of examples, Tipped Workers are required to arrive approximately 1 hour before the opening of the Restaurants to perform such side work and are required to remain at the restaurants after customers leave to perform closing side work.

14. The duties that Defendants require Plaintiff and Tipped Workers to perform are duties that are customarily assigned to employees in other restaurants that typically receive at least the full minimum wage rate. Here, Defendants paid Tipped Workers at the sub-minimum hourly wage rate for this work.

15. The side work that Defendants required of Plaintiff and Tipped Workers is not specific to particular customers, tables, or sections, but is performed in mass quantities for the entire shift or for future shifts.

16. Defendants required Plaintiff and Tipped Workers to spend this time performing non-tip producing side work, including, but not limited to: 1) making coffee, 2) getting buckets of ice from the basement, 3) cutting fruit, 4) refilling ketchup, salt, and pepper, 5) setting up the barista station, 6) organizing napkins and silverware, 7) restocking plateware 8), washing dishes 9) stepping in as a barista and making specialty drinks, 10) emptying busser bins, and 11) burning ice, and 12) dusting, scrubbing, and cleaning statutes, walls, and ceiling lamps, among other tasks.

17. As some of these duties are not related to Plaintiff's duties as Tipped Workers, Plaintiff and similarly situated Tipped Workers are engaged in dual occupations for which they

are entitled to the full minimum wage.

18. Upon information and belief, Defendants' timekeeping system was capable of tracking multiple job codes for different work assignments.

19. However, Defendants did not allow its Tipped Workers to clock in at the full minimum wage rate when performing the side work and dual jobs described in this Complaint, although Defendants had the capacity to do so.

20. Plaintiff and Tipped Workers also wore uniforms that included a t-shirt and hat with Defendants' logo.

21. Defendants maintained a policy and practice whereby they require Plaintiff and Tipped Workers to purchase their t-shirt and hat uniforms and failed to reimburse Plaintiff and Tipped Workers for these costs.

22. Defendants similarly failed to provide any uniform maintenance pay to Plaintiff and Tipped Workers as required by 12 N.Y.C.R.R. §146-1.7(b).

23. Defendants also failed to provide Plaintiff and all other similarly situated Tipped Workers with proper time of hire notices pursuant to NYLL § 195(1), as Plaintiff's wage notice forms failed to show them their correct regular rate of pay, their proper overtime rate, and the correct tip credit allowance rate.

24. Plaintiff relied on his wage notices to ensure that Defendants paid him the correct rate for the hours he worked.

25. Due to Defendants' failure to provide the correct regular rates of pay and correct tip credit allowance rates on the wage notices provided to Plaintiff and similarly situated Tipped Workers, Plaintiff and Tipped Workers were misinformed about the correct wages they earned, and thus they were deprived of the information necessary for reviewing their wages, which was a

direct cause for their economic injury, and in fact, resulted in their wages being underpaid.

26. Defendants' incorrect wage notices allowed Defendants to continue their unlawful wage and hour scheme without Plaintiff's and Tipped Workers' awareness that they were being underpaid.

27. Defendants similarly failed to provide Plaintiff and all other similarly situated Tipped Workers with accurate statements of wages pursuant to NYLL § 195(3), as Plaintiff's wage statements failed to show them their correct regular rate of pay, their proper overtime rate, and the correct tip credit allowance rate.

28. Plaintiff relied on his paystubs to ensure that Defendants paid them the correct rate for the hours they worked.

29. Due to Defendants' failure to provide the correct regular rates of pay and correct tip credit allowance rates on the wage statements provided to Plaintiff and similarly situated Tipped Workers, Plaintiff and Tipped Workers were misinformed about the correct wages they earned, and thus they were deprived of the information necessary for reviewing their wages, which was a direct cause for their economic injury, and in fact, resulted in their wages being underpaid.

30. Defendants' incorrect wage statements allowed Defendants to continue their unlawful wage and hour scheme without Plaintiff's and Tipped Workers' awareness that they were being underpaid.

31. Had Plaintiff and Tipped Workers been able to see that they were not being lawfully paid via their wage notices and wage statements, they would have been able to avoid underpayment of their wages. *See Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 308 (2d Cir. 2024) (plaintiff establishes concrete harm if plaintiff can show she "would have avoided some actual harm or obtained some actual benefit if accurate [statements] had been provided"); *see also Van Duser v.*

*Tozzer Ltd.*, No. 23 Civ. 9329 (AS), 2024 WL 4635495, at *5 (S.D.N.Y. Oct. 31, 2024).

32. Plaintiff's inability to crosscheck his wage notices and wage statements constitutes concrete harm.

33. Accordingly, Plaintiff and Tipped Workers are entitled to statutory penalties of fifty dollars for each workday that Defendants failed to provide accurate wage statements, up to a total of five thousand dollars each pursuant to NYLL § 195(1).

34. Furthermore, Plaintiff and Tipped Workers are entitled to statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide accurate wage statements, up to a total of five thousand dollars each pursuant to NYLL § 195(3).

35. Plaintiff now brings this action on behalf of himself and similarly situated current and former Tipped Workers who elect to opt in to this action pursuant to the FLSA, specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy violations of the wage-and-hour provisions of the FLSA by Defendants that have deprived Plaintiff and other similarly situated Tipped Workers of their lawfully earned wages.

36. Plaintiff brings this action on behalf of himself and similarly situated current and former Tipped Workers in New York pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy violations of the NYLL, Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

## THE PARTIES

### Plaintiff

**Humberto Rodriguez**

37. Humberto Rodriguez ("Rodriguez" or "Plaintiff") is an adult resident of Jersey City, New Jersey.

38. Plaintiff worked for Defendants at Serendipity 3 from approximately June 2022 to December 29, 2025 as a server.

39. Plaintiff is a covered employee within the meaning of the FLSA and the NYLL.

40. A written consent form for Plaintiff was filed with the Compliant.

**Defendants**

41. Defendants jointly employed Plaintiff and similarly situated Tipped Workers at all times relevant.

42. Defendants have substantial control over Plaintiff's and Tipped Workers' working conditions, and over the unlawful policies and practices alleged herein.

43. Defendants are part of a single integrated enterprise that has jointly employed Plaintiff and similarly situated employees at all times relevant.

44. During all relevant times, Defendants' operations are interrelated and unified.

45. During all relevant times, the Restaurants shared common management, and were centrally controlled and/or owned by Defendants.

46. During all relevant times, Defendants shared the same website, marketing, similar menus, and allowed and instructed Plaintiff and Tipped Workers to transfer or be shared by and between different restaurant locations controlled and/or owned by Defendants.

47. During all relevant times, Defendants have applied the same employment policies, practices, and procedures to Plaintiff and all Tipped Workers.

48. During all relevant times, Defendants have controlled the labor relations of the Restaurants.

49. During all relevant times, Defendants have been Plaintiff's employers within the meaning of the FLSA and NYLL.

**Serendipity Restaurant LLC**

50. Serendipity Restaurant LLC is a Foreign Limited Liability Company organized and existing under the laws of New York. It lists its Service of Process address as Martin Kelly, 701 Zerega Avenue, Bronx, NY 10473.

51. Serendipity Restaurant LLC has done business as Serendipity 3 throughout the relevant time period.

52. Serendipity Restaurant LLC was and is a covered employer within the meaning of the FLSA and the NYLL.

53. Serendipity Restaurant LLC has maintained control, oversight, and direction over Plaintiff, including timekeeping, payroll, and other employment practices that applied to them.

54. Serendipity Restaurant LLC applies the same employment policies, practices, and procedures to all Tipped Workers at the Restaurants, including policies, practices, and procedures with respect to payment of wages.

55. Upon information and belief, at all relevant times, Serendipity Restaurant LLC has had an annual gross volume of sales in excess of $500,000.

56. At all times relevant, Defendants have employed more than two employees and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

**Serendipity 3, Inc.**

57. Serendipity 3, Inc. is a Domestic Business Corporation organized and existing under the laws of New York. It lists its principal executive office as 225 E 60th Street, New York, NY 10022.

58. Serendipity 3, Inc. has done business as Serendipity 3 throughout the relevant time period.

59. Serendipity 3, Inc. was and is a covered employer within the meaning of the FLSA and the NYLL.

60. Serendipity 3, Inc. has maintained control, oversight, and direction over Plaintiff, including timekeeping, payroll, and other employment practices that applied to them.

61. Serendipity 3, Inc. applies the same employment policies, practices, and procedures to all Tipped Workers at the Restaurants, including policies, practices, and procedures with respect to payment of wages.

62. Upon information and belief, at all relevant times, Serendipity 3, Inc. has had an annual gross volume of sales in excess of $500,000.

63. At all times relevant, Defendants have employed more than two employees and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

**150 Squaretime LLC**

64. 150 Squaretime LLC is a Domestic Limited Liability Company organized and existing under the laws of New York. It lists its service process as The Limited Liability Company at 203 Aldershot Lane, Manhasset, NY 11030.

65. 150 Squaretime LLC has done business as Serendipity 3 throughout the relevant time period.

66. 150 Squaretime LLC was and is a covered employer within the meaning of the FLSA and the NYLL.

67. 150 Squaretime LLC has maintained control, oversight, and direction over Plaintiff, including timekeeping, payroll, and other employment practices that applied to them.

68. 150 Squaretime LLC applies the same employment policies, practices, and procedures to all Tipped Workers at the Restaurants, including policies, practices, and procedures

with respect to payment of wages.

69. Upon information and belief, at all relevant times, 150 Squaretime LLC has had an annual gross volume of sales in excess of $500,000.

70. At all times relevant, Defendants have employed more than two employees and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

## **JURISDICTION AND VENUE**

71. This Court has subject matter jurisdiction pursuant to 29 U.S.C. §216(b) and jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

72. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendants conduct business in this District.

## **COLLECTIVE ACTION ALLEGATIONS**

73. Plaintiff brings the First and Second Cause of Action, FLSA claims, on behalf of:

> All current and former Tipped Workers employed at the Restaurants in New York between February 3, 2023[3] and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective).

74. Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and the FLSA Collective for their minimum wages and overtime compensation owed.

75. Consistent with Defendants' policies, patterns, or practices, Plaintiff and the FLSA Collective were not paid the proper minimum wage for all hours worked up to 40 per workweek and premium overtime compensation for all hours worked beyond 40 per workweek.

76. Defendants also failed to furnish Plaintiff and the FLSA Collective with proper

[3] The class period is due to a tolling agreement that was executed between Plaintiff and Defendants that tolled the FLSA and NYLL statute of limitations back to June 19, 2019. *See* **Exhibit A**. The tolling agreement became effective on February 2, 2026 and was cancelled on June 24, 2026.

notice of the tip-credit.

77. All of the work that Plaintiff and the FLSA Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiff and the FLSA Collective have performed.

78. As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective. This policy and pattern or practice includes, but is not limited to, willfully failing to pay their employees, including Plaintiff and the FLSA Collective, the minimum wages for all hours worked up to 40 per workweek and premium overtime wages for all hours worked in excess of 40 hours per workweek.

79. A violation of the FLSA is "willful" if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988).

80. Defendants knew or should have known that their wage and hour practices relating to Tipped Workers violated the FLSA's prohibition against improper notice of the tip credit and excessive side work. In this regard, district courts around the country, including district courts throughout New York, have dealt with hundreds of similar violations against comparable restaurants. Additionally, despite that Defendants' time keeping system allowed the tracking of multiple job codes, they did not allow Tipped Workers to perform the side work and dual jobs outlined in this Complaint under a separate code that would have paid them the full minimum wage rate or at least could have tracked the amount of such side work to ensure compliance with the FLSA and NYLL.

81. Defendants failed to undertake any diligent review of their wage and hour practices

relating to Tipped Workers and/or did not stay up to date with its review of wage and hour practices related to Tipped Workers.

82. As a result, Defendants acted willful due to their reckless disregard of their conduct.

## CLASS ACTION ALLEGATIONS

83. Plaintiff brings the Third, Fourth, Fifth, Sixth, Seventh, and Eighth Causes of Action, NYLL claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and the class of persons consisting of:

> All current and former Tipped Workers at the Restaurants between June 19, 2019[4] and the date of the final judgment in this matter (the "NYLL Class").

84. The NYLL Class members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

85. There are more than fifty members of the NYLL Class.

86. Plaintiff's claims are typical of those claims that could be alleged by any NYLL Class member, and the relief sought is typical of the relief which would be sought by each NYLL Class member in separate actions.

87. Plaintiff and the NYLL Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected all NYLL Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the NYLL Class members.

88. Plaintiff is able to fairly and adequately protect the interests of the NYLL Class members and has no interests antagonistic to the NYLL Class members.

---

[4] *Id; see also* **Exhibit A.**

89. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

90. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

91. Common questions of law and fact exist as to the NYLL Class that predominate over any questions only affecting Plaintiff and the NYLL Class members individually and include, but are not limited to, the following:

(a) Whether Defendants failed to furnish Plaintiff and the NYLL Class with proper notice of the tip-credit;

(b) Whether Defendants failed to pay Plaintiff and the NYLL Class minimum wages for all of the hours they worked;

(c) Whether Defendants required Plaintiff and the NYLL Class to spend more than 20% and/or 2 hours, whichever is less, of their time performing non-tipped side work duties;

(d) Whether Defendants correctly compensated Plaintiff and the NYLL Class for hours worked in excess of 40 per workweek.

(e) Whether Defendants failed to reimburse Plaintiff and the NYLL Class for purchasing t-shirts and hats from Defendants as part of Plaintiff's and the NYLL Class's uniform;

(f) Whether Defendants failed to pay Plaintiff and the NYLL Class uniform maintenance pay;

(g) Whether Defendants failed to furnish Plaintiff and the NYLL Class with a proper time of hire wage notice, as required by the NYLL; and

(h) Whether Defendants failed to furnish Plaintiff and the NYLL Class with accurate statements with every payment of wages, as required by the NYLL.

## PLAINTIFF'S FACTUAL ALLEGATIONS

**Humberto Rodriguez**

92. Throughout his employment, Plaintiff's schedule varied, but he has generally worked the following scheduled hours, unless she missed time for vacation, sick days, or holidays, or obtained additional shifts:

(a) During slow season 2 to 3 days a week from either 9:00am or 10:00am until 5:00pm or 6:00pm.

(b) During high season 5 to 7 days a week from either 9:00am or 10:00am until 5:00pm or 6:00pm if he worked a single shift but if Plaintiff worked a double shift he finished between 10:00pm and 12:00am.

93. Throughout Plaintiff's employment, Defendants applied a tip credit towards the minimum wage paid to him for work performed in a Tipped Worker position.

94. Defendants failed to properly notify Plaintiff in writing of the tip credit provisions of the FLSA and NYLL.

95. Defendants also required Plaintiff to spend this time performing non-tip producing side work for more than 20 percent of his worktime and/or two hours, including, but not limited to: 1) making coffee, 2) getting buckets of ice from the basement, 3) cutting fruit, 4) refilling ketchup, salt, and pepper, 5) setting up barista station, 6) organize napkins and silverware, 7) restocking plateware 8), washing dishes 9) stepping in as a barista and making specialty drinks, 10) emptying bus bins, 11) burning ice, and 12) dusting, scrubbing, and cleaning statutes, walls,

and ceiling lamps, among other tasks.

96. As a result of the above, Defendants do not satisfy the requirements under the FLSA and NYLL by which they could apply a tip credit to the hourly rates paid to Plaintiff, and Defendants have failed to compensate him at the proper minimum and overtime wage rate.

97. At all times relevant, Plaintiff was entitled to receive the full statutory minimum wage rate for the first 40 hours of work each workweek and time and one-half the full minimum wage rate for all hours worked beyond 40 per workweek.

98. For example, between December 25, 2025 and December 31, 2025, Plaintiff worked 44.93 hours and Defendants paid Plaintiff at the reduced rate of $12 for 40 hours and at the reduced rate of $20.2494 for the remaining 4.93 hours.

99. Instead, Defendants should have been paid Plaintiff at the full minimum wage rate of $16.50 for 40 hours and the full overtime wage rate of $24.75 for the remaining 4.93 hours.

100. Additionally, Defendants failed to reimburse Plaintiff with the costs associated with purchasing t-shirts and hats, as part of a uniform, from Defendants, in violation of 12 N.Y.C.R.R. Part 146 § 146-1.8.

101. Defendants also required Plaintiff to wear a uniform bearing the Defendants logo but failed to provide a sufficient number of uniforms consistent with their average number of work days.

102. As a result, Defendants failed to pay Plaintiff uniform maintenance pay in violation of the NYLL.

103. Defendants also failed to furnish Plaintiff with a proper time of hire notices, as required by the NYLL.

104. Moreover, Defendants failed to furnish Plaintiff with accurate statements of wages

with each payment of wages as required by the NYLL.

105. Due to Defendants failure to provide the correct regular rate of pay and the correct tip credit rate on Plaintiff's wage notices and wage statements, Plaintiff was misinformed about his actual wages earned, and was thus deprived of the information necessary to review his wages earned, which was a direct cause for his economic injury, and in fact, resulted in his wages being underpaid.

**FIRST CAUSE OF ACTION**
**Fair Labor Standards Act – Minimum Wages**
**(Brought on behalf of Plaintiff and the FLSA Collective)**

106. Plaintiff reallege and incorporate by reference all allegations in all preceding paragraphs.

107. At all times relevant, Plaintiff and the FLSA Collective were, are, or have been employees, and Defendants were, are, or have been employers of Plaintiff and the FLSA Collective, within the meaning of 29 U.S.C §§ 201 et seq.

108. At all times relevant, Defendants have been employers of Plaintiff and the FLSA Collective, engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 201 et seq.

109. Defendants have not been eligible to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. §§ 201 et seq., because Defendants failed to give proper § 203(m) notice, and required them to perform a substantial amount of non-tipped "side work" in excess of 20 percent of their work time. Defendants compensated Plaintiff and the FLSA Collective at the tipped minimum wage rate rather than at the full hourly minimum wage rate as required by 29 U.S.C. §§ 201 et seq. Additionally, Defendants failed to provide Plaintiff and the FLSA Collective with proper § 203(m) notice of the tip credit as required by the FLSA.

110. Defendants also required Plaintiff and the FLSA Collective to pay for tools of the trade, such as uniforms.

111. As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**SECOND CAUSE OF ACTION**
**Fair Labor Standards Act – Overtime Wages**
**(Brought on behalf of Plaintiff and the FLSA Collective)**

112. Plaintiff reallege and incorporate by reference all allegations in all preceding paragraphs.

113. The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 et seq., and the supporting federal regulations, apply to Defendants and protect Plaintiff and the FLSA Collective.

114. Defendants failed to pay Plaintiff and the FLSA Collective the premium overtime wages to which they were entitled under the FLSA – at a rate of 1.5 times the full minimum wage rate – for all hours worked beyond 40 per workweek.

115. As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective have suffered damages by being denied overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**THIRD CAUSE OF ACTION**
**New York Labor Law – Minimum Wages**
**(Brought on behalf of Plaintiff and the NYLL Class)**

116. Plaintiff reallege and incorporate by reference all allegations in all preceding paragraphs.

117. At all times relevant, Plaintiff and the NYLL Class have been employees of Defendants, and Defendants have been employers of Plaintiff and the NYLL Class within the meaning of the NYLL §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations.

118. Defendants have failed to pay Plaintiff and the NYLL Class the minimum hourly wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

119. Pursuant to the NYLL, Article 19, §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations, Defendants have been required to pay Plaintiff and the members of the NYLL Class the full minimum wage at a rate of $15.00 per hour on and after December 31, 2018; $16.00 per hour on and after December 31, 2024; $16.50 per hour on and after January 1, 2025; and $17.00 per hour on and after January 1, 2026.

120. Defendants have failed to notify Plaintiff and the NYLL Class of the tip credit in writing as required by the NYLL and the supporting New York State Department of Labor Regulations.

121. Defendants also required Plaintiff and the NYLL Class to spend a substantial amount of time, 2 hours or more than 20% of their work time, performing non-tip producing side work duties that were related to their tipped occupation, and required Plaintiff and the NYLL Class to perform non-tip producing side work unrelated to their tipped occupation.

122. As a result, Plaintiff and the NYLL Class have been entitled to the full minimum wage rate rather than the reduced tipped minimum wage rate during this time period.

123. Due to Defendants' violations of the NYLL, Plaintiff and the NYLL Class are entitled to recover from Defendants their unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

**FOURTH CAUSE OF ACTION**
**New York Labor Law – Overtime Wages**
**(Brought on behalf of Plaintiff and the NYLL Class)**

124. Plaintiff reallege and incorporate by reference all allegations in all preceding paragraphs.

125. The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants, and protect Plaintiff and the NYLL Class.

126. Defendants failed to pay Plaintiff and the NYLL Class the premium overtime wages to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations – at a rate of 1.5 times the full minimum wage rate – for all hours worked beyond 40 per workweek.

127. Due to Defendants' violations of the NYLL, Plaintiff and the NYLL Class are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**FIFTH CAUSE OF ACTION**
**New York Labor Law – Uniform Reimbursement**
**(Brought on behalf of Plaintiff and the NYLL Class)**

128. Plaintiff reallege and incorporate by reference all allegations in all preceding paragraphs.

129. Defendants required Plaintiff and the NYLL Class to purchase t-shirts and hats but failed to reimburse or compensate them for these purchases.

130. Due to Defendants' violations of the NYLL, Plaintiff and the NYLL Class are entitled to recover from Defendants the amounts of the legally required reimbursements for the purchase of these uniforms, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

**SIXTH CAUSE OF ACTION**
**New York Labor Law – Uniform Maintenance Pay**
**(Brought on behalf of Plaintiff and the NYLL Class)**

131. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

132. At all times relevant, Plaintiff and the NYLL Class have been employees of Defendants, and Defendants have been the employer of Plaintiff and the NYLL Class within the meaning of the NYLL §§ 650 et seq., and the supporting New York State Department of Labor Regulations.

133. Defendants have required Plaintiff and the NYLL Class to wear a uniform bearing the Defendants' logo, but failed to provide a sufficient number of uniforms consistent with the average number of days worked by Plaintiff and the NYLL Class.

134. Defendants have failed to pay Plaintiff and the NYLL Class uniform maintenance pay to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

135. By Defendants' failure to pay Plaintiff and the NYLL Class uniform maintenance pay, Defendants have violated the NYLL, Article 19 §§ 650 et seq., and the supporting New York State Department of Labor Regulations.

136. Due to Defendants' violations of the NYLL, Plaintiff and the NYLL Class are entitled to recover from Defendants their unpaid uniform maintenance pay, liquidated damages,

reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

**SEVENTH CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Proper Annual Wage Notices**
**(Brought on behalf of Plaintiff and the NYLL Class)**

137. Plaintiff reallege and incorporate by reference all allegations in all preceding paragraphs.

138. Defendants have failed to supply Plaintiff and the NYLL Class with a proper time of hire wage notice, as required by NYLL, Article 6, § 195(1), in English or in the language identified as their primary language, at the time of hiring and at subsequent wage changes, containing, among other items: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; overtime rate; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

139. Defendants failed to provide the correct regular rates of pay and correct tip credit allowance rates on the wage notices provided to Plaintiff and similarly situated Tipped Workers.

140. As a result, Plaintiff and Tipped Workers were misinformed about the correct wages they earned, and thus they were deprived of the information necessary for reviewing their wages, which was a direct cause for their economic injury, and in fact, resulted in their wages being underpaid.

141. Due to Defendants' violations of NYLL, Article 6, § 195(1), Plaintiff and the NYLL Class are entitled to statutory penalties of fifty dollars for each workday that Defendants

failed to provide them with wage notices, or a total of five thousand dollars each, as well as reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198(1-b).

## EIGHTH CAUSE OF ACTION
**New York Labor Law – Failure to Provide Accurate Wage Statements**
**(Brought on behalf of Plaintiff and the NYLL Class)**

142. Plaintiff reallege and incorporate by reference all allegations in all preceding paragraphs.

143. Defendants failed to supply Plaintiff and the NYLL Class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

144. Defendants failed to provide the correct regular rates of pay and correct tip credit allowance rates on the wage statements provided to Plaintiff and similarly situated Tipped Workers.

145. As a result, Plaintiff and Tipped Workers were misinformed about the correct wages they earned, and thus they were deprived of the information necessary for reviewing and calculating their wages, which was a direct cause for their economic injury, and in fact, resulted in their wages being underpaid.

146. Due to Defendants' violations of NYLL, Article 6, § 195(3), Plaintiff and the NYLL Class are entitled to statutory penalties of two hundred fifty dollars for each workweek that

Defendants failed to provide them with accurate wage statements, or a total of five thousand dollars, and reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198(1-d).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, individually, and on behalf of all other similarly situated persons, respectfully request that this Court grant the following relief:

A. That, at the earliest possible time, Plaintiff be allowed to give notice of this collective action, or that the Court issue such notices, to all Tipped Workers who are presently, or have at any time between June 19, 2019 and up through and including the date of this Court's issuance of court-supervised notice, worked at the Restaurants. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B. Unpaid minimum wages and overtime compensation and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

C. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D. Designation of Plaintiff Humberto Rodriguez as the representative of the NYLL Class and counsel of record as Class Counsel;

E. Unpaid minimum wages, overtime compensation, uniform reimbursement, uniform maintenance pay, and other unpaid wages, and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

F. Statutory penalties of fifty dollars for each workday that Defendants failed to provide Plaintiff and the NYLL Class with proper annual wage notices, or a total of five thousand

dollars each, as provided for by NYLL, Article 6 § 198;

G. Statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide Plaintiff and the NYLL Class with accurate wage statements, or a total of five thousand dollars each, as provided for by NYLL, Article 6 § 198;

H. Prejudgment and post-judgment interest;

I. Reasonable attorneys' fees and costs of the action; and

J. Such other relief as this Court shall deem just and proper.

Dated: June 25, 2026
New York, New York

Respectfully submitted,

/s/ Brian S. Schaffer
Brian S. Schaffer

**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Katherine Bonilla
28 Liberty Street, 30th Floor
New York, NY 10005
Telephone: (212) 300-0375

*Attorneys for Plaintiff and the Putative Class and Collective*